FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 24, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LONNIE WHITE, an individual; JEANA HILL, an individual, | No. 4:20-CV-05009-SAB |
| Plaintiffs, | |
| v. | **ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING MOTION TO STRIKE AS MOOT** |
| WALLA WALLA COUNTY, a political subdivision of the State of Washington; TOM BEYER, an individual employed by Walla Walla County, | |
| Defendants. | |

Before the Court are Defendants' Motion for Summary Judgment Dismissal, ECF No. 15, and Defendants' Motion to Strike Portions of the Declaration of Michael David Myers, ECF No. 29. The motions were considered without oral argument. Plaintiff is represented by Michael Myers and Defendants are represented by Luke O'Bannan and Paul Kirkpatrick.

**Facts**

In August 2016, Walla Walla County adopted Ordinance No. 451 entitled "Walla Walla County Fair Dress Code Policy" ("the Ordinance"), which prohibited the display of criminal street gang identifiers at the Walla Walla County Fair ("the

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING MOTION TO STRIKE AS MOOT** # 1

Fair"). ECF No. 1 at 2. The Ordinance set out two categories of prohibited identifiers: Category One identifiers include "clothing, tattoos, patches or other items with the name, initials, or symbol of a designated criminal street gang," whereas Category Two identifiers include those that are associated with a designated criminal street gang, but do not fall into Category One. ECF No. 17-A at 5. A fairgoer can violate the dress code if they (1) wear/display one or more Category One identifiers of a designated criminal street gang or (2) wear/display one or more Category Two identifiers and a peace officer on duty has reasonable suspicion that the fairgoer is a criminal street gang member or associate wearing a Category Two identifier to signify such membership or association. *Id.* at 7.

On August 30, 2019, Plaintiffs Jeana Hill ("Ms. Hill") and Lonnie White ("Mr. White") attended the Walla Walla County Fair. ECF No. 1 at 4. Plaintiffs were wearing several items of clothing with identifiers listed in the Ordinance. First, Plaintiffs were wearing shirts that read:



**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING MOTION TO STRIKE AS MOOT # 2**

*Id.* at 3. Plaintiffs allege that approximately 30 other people who attended the Fair were wearing this same shirt ("the Motorcycle Rights Shirt"). The Ordinance identifies "Amigos," "Bandidos," "Brother Speed," "Hombres," "Hermanos," and "Canyon Riders" as Category One identifiers. ECF No. 17-B at 11, 10, 16, 14, 13, 15.

In addition to the shirts, Mr. White wore a baseball hat with the letters "SYLB," which is an acronym for "Support your Local Bandidos," whereas Ms. Hill wore a baseball hat and a button with the letters "SYLA," which is an acronym for "Support your Local Amigos." ECF No. 1 at 4. The Ordinance identifies "SYLB" and "SYLA" are Category Two identifiers. ECF No. 17-B at 15, 11.

Plaintiffs allege that, at approximately 1:00 p.m. on August 30, 2019, Deputy Tom Beyer ("Deputy Beyer") informed Mr. White and Ms. Hill that their "SYLB" and "SYLA" attire put them in violation of the Ordinance and that they needed to remove these items and leave them outside the fairgrounds before re-entering. ECF No. 1 at 5. But, despite the Motorcycle Rights Shirts containing six Category One identifiers, Deputy Beyer told Plaintiffs that the Motorcycle Rights Shirts were not a violation of the Ordinance. *Id.* Plaintiffs also allege that, of the 30 other people who wore the Motorcycle Rights Shirts at the Fair, none were asked to leave or remove the shirt or informed that it violated the Ordinance. *Id.* at 3. In fact, several people who wore the Motorcycle Rights Shirt even posed for pictures with law enforcement at the Fair. *Id.* at 4. Moreover, Plaintiffs allege that there were fairgoers such as W.G. Kincheloe, who attended the Fair wearing a Category Two identifier (i.e., a "SUPPORT THE RED & GOLD" patch on his jacket) and who law enforcement knew had ties to motorcycle clubs, but who were not asked to remove their attire or leave the Fair. ECF No. 27.

Plaintiffs allege that, because Deputy Beyer and the Walla Walla County Ordinance forced Plaintiffs to remove their attire with Category Two identifiers,

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING MOTION TO STRIKE AS MOOT # 3**

but did not force any other fairgoer to remove attire with Category One or Category Two identifiers, this violated both their federal and state constitutional rights. First, Plaintiffs are bringing claims against Deputy Beyer and Walla Walla County under 42 U.S.C. § 1983 for violation of their federal constitutional rights. Plaintiffs allege that Deputy Beyer's actions and the Walla Walla County Ordinance No. 451 violated Plaintiffs' free speech rights under the First Amendment, due process rights under the Fourteenth Amendment, and equal protection rights under the Fourteenth Amendment. ECF No. 1 at 5-6. Plaintiffs also allege that Deputy Beyer's actions constituted unconstitutional selective enforcement. *Id.* at 6-7. Second, Plaintiffs are bringing associated state claims under the Washington State Constitution, alleging that Deputy Beyer and Walla Walla County violated Plaintiffs' state constitutional free speech and due process rights. *Id.* at 7. Plaintiffs seek general and special damages, actual and statutory attorney's fees and litigation costs, a declaratory judgment that the Ordinance is unconstitutional as enforced and as applied, a temporary restraining order and a preliminary and permanent injunction enjoining Defendants from enforcing the Ordinance. *Id.* at 7-8.

### Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING MOTION TO STRIKE AS MOOT** # 4

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### First Amendment Claim

Defendants argue that Plaintiffs cannot show a First Amendment free speech violation because (1) the Ordinance has a specified list of prohibited identifiers, so it is not void for vagueness, (2) the Ordinance is not overbroad because it does not criminalize a substantial amount of protected behavior, (3) Plaintiffs' attire is not protected under the First Amendment because there was not a great likelihood that the message Plaintiffs intended their SYLB/SYLA attire to convey would be understood by the general public, and (4) even if Plaintiffs' attire was protected under the First Amendment as expressive conduct, the Ordinance was a valid, viewpoint-neutral time, place, and manner restriction. ECF No. 15 at 3-19.

Plaintiffs argue that their First Amendment rights were violated because (1) the Ordinance was vague as applied, (2) Plaintiffs' attire was expressive conduct protected under the First Amendment because there was a great likelihood that those who viewed it would understand the message Plaintiffs intended to convey, and (3) the Ordinance was not a viewpoint-neutral regulation. ECF No. 21.

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING MOTION TO STRIKE AS MOOT** # 5

In response, Defendants note that Plaintiffs seemingly abandoned their claims that the Ordinance is unconstitutionally vague on its face and that the Ordinance is overbroad. ECF No. 28 at 2-3. But as to Plaintiffs' remaining arguments, Defendants argue that (1) Plaintiffs failed to create a genuine issue of material fact as to whether the message behind their attire would likely be understood because they only limited the audience to law enforcement and fellow motorcycle gang enthusiasts, instead of the general public at the Fair, (2) the Ordinance was reasonable and viewpoint-neutral. ECF No. 28.

The Court agrees with Defendants that Plaintiffs do not assert independent void for vagueness and overbreadth claims. Plaintiffs' vagueness argument is substantially the same as their selective enforcement claim, whereas Plaintiffs' overbreadth argument is substantially the same as their claim that the Ordinance is not a valid speech regulation. Thus, the Court will focus its discussion on the remaining arguments regarding whether Plaintiffs' attire was expressive conduct under the First Amendment and whether the Ordinance was viewpoint-neutral and reasonable considering the purpose served by the forum.

Because Plaintiffs can show multiple genuine disputes of material fact in regard to these claims, the Court denies Defendants' Motion for Summary Judgment.

1. <u>Whether Plaintiffs' attire was expressive conduct protected under the First Amendment</u>

The threshold question is whether Plaintiffs were protected under the First Amendment. Here, Plaintiffs claim that their actions of wearing baseball hats and a button with SYLB and SYLA written on them were protected under the First Amendment. Because Plaintiffs engaged in "symbolic conduct that, 'on its face, does not necessarily convey a message' (citation omitted)," rather than engaging in written or spoken speech, whether Plaintiffs get First Amendment protection is

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING MOTION TO STRIKE AS MOOT** # 6

governed by the expressive conduct test. *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1061 (9th Cir. 2010).

"The government generally has a freer hand in restricting expressive conduct than it has in restricting the written or spoken word." *Texas v. Johnson*, 491 U.S. 397, 406 (1989). But this does not mean that government regulation of expressive conduct is unprotected by the First Amendment. Instead, Plaintiffs bear the burden of showing that their expressive conduct is entitled to constitutional protection. *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 294 n.5 (1984). Plaintiffs can meet this burden if they can show that their expressive conduct was "sufficiently imbued with elements of communication." *Spence v. State of Wash.*, 418 U.S. 405, 409 (1974). The *Spence* test for expressive conduct has two prongs: (1) whether Plaintiffs had an intent to convey a particularized message and (2) whether, given the surrounding circumstances, the likelihood was great that the message would be understood by those who viewed it. *Id.* at 410-11.

Here, it is clear that Plaintiffs had an intent to convey a particularized message. Plaintiffs both state that they wore their SYLB and SYLA attire, in conjunction with their Motorcycle Rights Shirt, because they felt that motorcyclists were being treated unfairly by law enforcement and they wanted to express their support for the Bandidos and Amigos Motorcycle Clubs. ECF Nos. 23 at ¶ 3, 24 at ¶ 1. This is contrary to the cases Defendants cite to for the proposition that motorcycle insignia is not protected speech under the First Amendment. For example, in *Villegas v. City of Gilroy*, plaintiffs brought a First Amendment challenge against the City of Gilroy and the Gilroy Garlic Festival after they were asked to remove their vests displaying motorcycle club insignia pursuant to an unwritten festival dress code. 484 F.3d 1136, 1137-38 (9th Cir. 2007), *aff'd en banc on other grounds Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950 (9th Cir. 2008). But the Ninth Circuit found that the district court was correct in concluding that the plaintiffs were not engaged in protected expressive conduct

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING MOTION TO STRIKE AS MOOT** # 7

because plaintiffs did not have an intent to convey a particularized message. *Id.* at 1140. After all, "[a]ll of the members of the plaintiffs' motorcycle club had different interpretations of the meaning of their club insignia" and "plaintiffs could not agree on a common theme or message that they sought to convey by wearing their vests and insignia." *Id.* Similarly, in *Kohlman v. Village of Midlothian*, the plaintiffs brought a First Amendment challenge after they were denied service at bars and restaurants for wearing Hells Angels' clothing. *See* 833 F. Supp.2d 922, 926-30 (N.D. Ill. 2011). But once again, in that case, plaintiffs failed to identify a particularized message they intended to convey by visually showing that they belonged to the Hells Angels. *Id.* at 936. In fact, during a deposition, one of the plaintiffs specifically answered "no" when asked if he was sending any sort of message by wearing his Hells Angels insignia and said that "It is just Hells Angels insignia." *Id.* Moreover, *Spence* specifies that a court must look at a plaintiff's activity in combination with the factual context and environment where the activity was undertaken. *Spence*, 418 U.S. at 409-410. Here, Plaintiffs were wearing shirts that specifically said "I believe in the 1st Amendment rights of the Bandidos . . . [and] Amigos . . . to express themselves and associate with one another at the Walla Walla fair" and "I demand the right to support motorcycle clubs that have been profiled and discriminated against by law enforcement." This, in conjunction with their SYLB/SYLA attire, makes it clear that Plaintiffs intended to convey a particularized message. ECF No. 1. Moreover, Plaintiffs agree that the message they intended to convey was to protest unfair treatment of motorcycle clubs by law enforcement. ECF Nos. 23, 24. Thus, a reasonable jury could find that the first prong of the *Spence* test is satisfied.

The second prong of the *Spence* test is whether, given the surrounding circumstances, the likelihood was great that the message would be understood by those who viewed it. But the parties disagree over how to define the scope of "those who viewed it." Defendants argue that "those who viewed it" encompasses

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING MOTION TO STRIKE AS MOOT** # 8

the general public who attended the fair, who would not be likely to understand the meaning behind Plaintiffs' SYLB/SYLA attire. ECF No. 15 at 13. Conversely, Plaintiffs argue that "those who viewed it" should be defined as law enforcement and members of the motorcycle community who attended the fair, who would be likely to understand the meaning behind Plaintiffs' SYLB/SYLA attire. ECF No. 21 at 10.

Courts look at the context of the expressive conduct and who Plaintiffs intended to communicate with in determining whether the expressive conduct would likely be understood and by whom. *Spence*, 418 U.S. at 410 ("[T]he context in which a symbol is used for purposes of expression is important, for the context may gave meaning to the symbol."); *Edge v. City of Everett*, 929 F.3d 657, 669 (9th Cir. 2019) ("Context is everything when deciding whether others will likely understand an intended message conveyed through expressive conduct."); *Nunez v. Davis*, 169 F.3d 1222, 1226 (9th Cir. 1999). For example, in *Villegas*, in addition to finding that the plaintiffs did not intend to convey a particularized message through their motorcycle insignia, the Ninth Circuit also found that—given the context—there was little likelihood that the plaintiffs' message would be understood by those viewing their vests. *Villegas*, 484 F.3d at 1140-41. The Court stated that, given that the plaintiffs wore their motorcycle vests to a garlic festival, there was nothing about the festival or any other context that would have given any additional meaning to the plaintiffs' act of wearing their vests. *Id.*[1] Similarly, in

---

[1] When this case was reheard and affirmed *en banc*, the Ninth Circuit primarily addressed issues of (1) whether the Gilroy Garlic Festival's expulsion of the plaintiffs was state action, (2) whether the city's enforcement of a private entity's dress code was unconstitutional, and (3) whether the city was liable under *Monell*. But the Ninth Circuit did not reach the question of whether the plaintiffs' wearing

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING MOTION TO STRIKE AS MOOT # 9**

*Edge v. City of Everett*, the plaintiffs wore pasties and g-strings to serve coffee and non-alcoholic beverages at drive-through stands until the City of Everett passed a Dress Code Ordinance requiring coverage of "minimum body areas." *Edge*, 929 F.3d at 660-62. The baristas challenged the Dress Code Ordinance as unconstitutional because they argued that their wearing of the bikinis constituted expressive conduct intended to convey messages of female empowerment, confidence, and "fearless body acceptance." *Id.* at 662. But the Court found that, even if the baristas did intend to convey this message, there was not a great likelihood that this message would be understood by those who viewed the baristas' outfits. *Id.* at 669. It is true that, in both *Villegas* and *Edge*, the Ninth Circuit defined "those who viewed it" as members of the general public. *See* ECF No. 28 at 6. But in both of those cases, the context of the plaintiffs' actions suggested that their conduct was directed towards the general public (i.e., wearing clothing at a public garlic festival and wearing revealing outfits at a public drive-through barista stand). Conversely, in *Nunez v. Davis*, the plaintiff's expressive conduct consisted of arranging for two clerks who did not work for a judge's reelection campaign to attend a training seminar after the judge instructed plaintiff to limit attendees to only those who had worked on his reelection campaign. 169 F.3d 1222, 1226 (9th Cir. 1999). Ms. Nunez stated that she intended to convey a message to the court clerks and other co-workers that the judge should not condition clerks' benefits on working for his reelection and that the court clerks and employees understood that message. *Id.* Thus, the Court found that this was sufficient to constitute expressive conduct, even though members of the general public would likely not have understood the message behind Ms. Nunez's conduct.

Furthermore, even if the public would not understand a message by itself,

---

of the vests constituted expressive conduct. *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 958 (9th Cir. 2008).

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING MOTION TO STRIKE AS MOOT # 10**

they may understand a message if it is paired with other elucidating context. For example, in *Vlasak v. Superior Court of California ex rel. Cty. of Los Angeles*, the plaintiff held up a bull hook at a planned "teach-in" for attendees of a circus to protest animal cruelty. 329 F.3d 683, 686 (9th Cir. 2003). The City of Los Angeles argued that "mere possession of the bull hook was not expressive conduct because the circus attendees to whom [the plaintiff] was trying to communicate wouldn't know what it was." *Id.* at 690. But the Court found that, given that the plaintiff held up the bull hook alongside pictures showing the hook being used on elephants, passersby at the circus would understand the purpose of the plaintiff's message. *Id.* at 690-91.

Here, Plaintiffs' declarations are unclear about who they intended to convey their message to. Plaintiffs merely state that they wore their SYLB/SYLA attire to express support for the motorcycle clubs to protest unfair treatment by law enforcement. ECF Nos. 23, 24. Mr. White's declaration does say that "It would have been clear to anyone associated with the motorcycle club culture that Ms. Hill was not a member of the Amigos. The Amigos do not have any female members," which may suggest that Plaintiffs' intended audience was other motorcycle club members. ECF No. 23 at ¶ 5. But the uncertainty about Plaintiffs' intended audience creates a genuine dispute of material fact. Moreover, even if the Court agreed with Defendants and found that "those who viewed it" means members of the general public, there would still be a genuine dispute of material fact as to whether the public would have understood Plaintiffs' message. Unlike in *Villegas*, where the plaintiffs wore their motorcycle insignia, but had no other context for why they were wearing the insignia or what message they were trying to send through the insignia, Plaintiffs were also wearing the Motorcycle Rights Shirts. These shirts stated, in a manner that would be clear to any English-speaking lay person, that Plaintiffs believed in the First Amendment rights of motorcycle club members to express themselves at the Walla Walla Fair. ECF No. 1 at 3. Thus,

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING MOTION TO STRIKE AS MOOT # 11**

there is a genuine dispute of material fact as to whether the public viewing Plaintiffs' SYLB/SYLA attire, in conjunction with the Motorcycle Rights Shirts, would have understood that Plaintiffs were trying to convey a message of support for motorcycle clubs.

Because genuine disputes of material fact exist regarding who Plaintiffs intended to communicate their message to and whether these people would have understood Plaintiffs' SYLB/SYLA attire, especially when viewed in conjunction with the Motorcycle Rights Shirts, the Court denies Defendants' Motion for Summary Judgment.

2. <u>Whether the Ordinance was viewpoint-neutral and reasonable considering the purpose served by the forum</u>

Both the Supreme Court and the Ninth Circuit have stated that the constitutionality of regulations restricting expressive conduct is governed by the *O'Brien* test. *Anderson*, 621 F.3d at 1059; *Johnson*, 491 U.S. at 403 (1989). The *O'Brien* test states that a government regulation on expressive conduct is sufficiently justified if: (1) it is within the constitutional power of the Government; (2) it furthers an important or substantial governmental interest; (3) the governmental interest is unrelated to the suppression of free expression; and (4) the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. *United States v. O'Brien*, 391 U.S. 367, 377 (1968). But the Supreme Court has said that the *O'Brien* test is "little, if any, from the standard applied to time, place, or manner restrictions." *Clark*, 468 U.S. at 298. The test governing time, place, or manner restrictions in a limited public forum is: (1) whether the restriction was viewpoint-neutral and (2) whether the restriction is reasonable in light of the purpose served by the forum. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983); *Hopper v. City of Pasco*, 241 F.3d 1067, 1075 (9th Cir. 2001). In order to come under the more lenient *O'Brien*/*Clark* test, however, the Court must find that the regulation was

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING MOTION TO STRIKE AS MOOT** # 12

unrelated to the suppression of free expression. Otherwise, if the regulation *is* related to the suppression of free expression, then the Court must apply "the most exacting scrutiny." *Johnson*, 491 U.S. at 403, 412.

Here, the Walla Walla County Fair is a limited public forum. *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 655 (1981) ("The Minnesota State Fair is a limited public forum."); *see also Marchand v. Grant Cty.*, No. CV-07-182-RHW, 2009 WL 2998184, at *4 (E.D. Wash. Sept. 15, 2009) and *Hodge v. Lynd*, 88 F. Supp.2d 1234, 1241 (D.N.M. 2000). Thus, the Court must first determine whether the Ordinance was unrelated to the suppression of free expression. If so, then the Court must determine whether the Ordinance was viewpoint-neutral and if it was reasonable considering the purpose served by the forum.

> a. *Whether the Ordinance is unrelated to the suppression of free expression*

The threshold inquiry in determining whether the *O'Brien/Clark* time, place, or manner test applies is whether the regulation was unrelated to the suppression of free expression. *Johnson*, 491 U.S. at 403; *Perry*, 460 U.S. at 46. Even if the government's proffered justification for the regulation is facially reasonable, the Court must still look at whether the regulation was "in fact based on the desire to suppress a particular point of view (citations omitted)." *Sammartano v. First Judicial Dist. Court, in & for Cty. of Carson City*, 303 F.3d 959, 970 (9th Cir. 2002), *abrogated on other gronds by Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 812 (1985). When making this determination, courts look at whether there is any evidence in the record to support that the government's asserted interest is genuine. For example, courts have found that a government's interest in protecting the safety of the public and safeguarding people against violence is a legitimate government interest unrelated to the suppression of free expression. *Vlasak*, 329

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING MOTION TO STRIKE AS MOOT** # 13

F.3d at 690-91; *Edwards v. City of Coeur d'Alene*, 262 F.3d 856, 862 (9th Cir. 2001). If there is no evidence in the record to support that there was any risk of danger or violence, then courts are more likely to find that the government was impermissibly motivated by a desire to suppress free expression. *Sammartano*, 303 F.3d at 972; *Johnson*, 491 U.S. at 407-08.

Here, there are genuine disputes of material fact regarding whether Defendants had legitimate and legal justifications for the Walla Walla County Ordinance. Defendants argue that the government's interest in preventing violence and protecting the family-friendly atmosphere of the fair was sufficiently justified—they point first to the Findings of Fact supporting the Ordinance, in which the Walla Walla County Board of Commissioners found that "Confrontations between criminal street gangs have occurred in Walla Walla County and surrounding communities" and "[c]onfrontations between criminal street gangs have occurred at other fairs in Washington and in other states (e.g. Northwest Washington Fair 2011, Puyallup Fair, 2009." ECF No. 17-A at ¶¶ 4-5. Moreover, Defendants state that there was one reported incident at the Walla Walla County Fair where 15 members of the 18th Street gang harassed fairgoers, resulting in the stabbing of two people. ECF No. 17-C. Conversely, Plaintiffs argue that that this one incident of gang violence at the Walla Walla County Fair in a 154-year period is insufficient to justify the Ordinance, especially given that that incident involved a Central American and Mexican gang, rather than a motorcycle club, and the Ordinance is a "'solution' in search of a problem." ECF No. 21 at 11-12. In response, Defendants argue that, even if motorcycle gangs have not previously caused violence at the Fair, "[t]here is no requirement that the County wait for a tragedy or to favor motorcycle gangs. Doing so, in fact, may give rise to a valid constitutional challenge, as the government would be favoring one type of criminal street gang over another." ECF No. 28 at 8-9.

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING MOTION TO STRIKE AS MOOT** # 14

In *Vlasak*, the challenged regulation prohibited demonstration equipment at protests if they were (1) rectangular wooden pieces more than 1/4 inch thick and 2 inches wide, or (2) non-rectangular pieces thicker than 3/4 inch. *Vlasak*, 329 F.3d at 686. The Ninth Circuit found that the government's interest in passing the regulation to prevent violence was genuine because the ordinance explained that it was enacted because "police officers had been injured by large wooden sign poles in prior demonstrations." *Id.* at 689–90. The Circuit also found that this stood in contrast to *Edwards*, where the Court struck down an ordinance banning the attachment of any wooden, plastic, or other type of support to a placard or sign as the city did not point to any parade or public assembly where protesters used sign handles as instruments of violence. *Id.*; *Edwards*, 262 F.3d at 864-65. The Circuit also found it important to note that the ordinance in *Vlasak* did not ban an entire form of expression—it merely said that the wooden sticks attached to a demonstrator's sign must not exceed specified thickness dimensions, but did not place limits on the length dimensions or any other form of expression during picketing or demonstrations. *Vlasak*, 329 F.3d at 690.

Conversely, in *Johnson*, the U.S. Supreme Court held that Johnson's conviction for flag-burning under a Texas statue criminalizing the "desecration of a venerated object" violated the First Amendment because, although Texas asserted an interest in preventing breaches of the peace, "no disturbance of the peace actually occurred or threatened to occur because of Johnson's burning of the flag." *Johnson*, 491 U.S. at 400, 407-08. Similarly, in *Sammartano*, the plaintiffs challenged a courthouse dress code policy prohibiting "clothing, attire, or 'colors' which have symbols, markings or words indicating an affiliation with street gangs, bikers or similar organizations (citation omitted)" after the plaintiffs were prohibited from entering the courthouse while wearing jackets and vests with various motorcycle club logos. *Sammartano*, 303 F.3d at 963-64. The courthouse justified the dress code on the grounds that "[s]uch clothing or attire can be

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING MOTION TO STRIKE AS MOOT** # 15

extremely disruptive and intimidating, especially when members of different groups are in the building at the same time (citation omitted)." *Id.* at 694. The Ninth Circuit found that, given that none of the courthouse's affidavits mentioned any incident involving individuals wearing biker clothing creating problems with disruption, it could "only conclude that the Rules' very specific restriction on expression in the Complex was 'impermissibly motivated by a desire to suppress a particular point of view' (citation omitted)." *Id.* at 967, 972.

Here, there is some evidence to support that fairgoers wearing gang symbols may lead to disruption and violence, such as in the case of the 18th Street gang incident. But this is the only specific incident Defendants point to in order to support their assertion that the Ordinance is necessary to prevent violence. ECF No. 17-C.[2] Thus, especially given the sweeping nature of the Ordinance (further discussed below), genuine issues of material fact exist as to whether Defendants passed the Ordinance for reasons unrelated to the suppression of free expression. As such, the Court denies Defendants' Motion for Summary Judgment.

### i.  *Whether the Ordinance was viewpoint-neutral*

In the Ninth Circuit's own words, "[w]e freely admit that the Supreme Court's concept of viewpoint neutrality in First Amendment jurisprudence has not been easy to understand." *Sammartano*, 303 F.3d at 970. At a broad level of generality, viewpoint-neutral simply means that the Government cannot discriminate against speech/conduct on the grounds that the speaker is for or against a certain position on an otherwise permissible subject. *Id.* ("Although a speaker may be excluded from a nonpublic forum if he wishes to address a topic

---

[2] The Findings of Fact supporting the Ordinance also mention two other specific incidents of gang violence at fairs—the Northwest Washington Fair in 2011 and the Puyallup Fair in 2009—but Defendants do not discuss these incidents in their briefs. ECF No. 17-A at ¶ 5.

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING MOTION TO STRIKE AS MOOT** # 16

not encompassed within the purpose of the forum . . . the government violates the First Amendment when it denies access to a speaker solely to suppress the point of view he espouses on an otherwise includible subject."). But "[t]he difficulty largely results from an elusive distinction drawn in the caselaw between discrimination on the basis of subject matter and discrimination on the basis of viewpoint." *Id.* When considering whether a regulation is permissibly discriminating on the basis of subject matter or instead is impermissibly discriminating on the basis of viewpoint, the Ninth Circuit instructed that courts should engage in two specific inquiries. First, courts should figure out whether the limitations on expressive activity "reflect a true incompatibility between the activity and the forum." *Id.* at 970-71. If the court concludes that "the government is plainly motivated by the nature of the message rather than the limitations of the forum or a specific risk within that forum, it is regulating a viewpoint rather than a subject matter." *Id.* at 971. Second, courts must carefully scrutinize a subject matter classification to make sure the government is not "claiming that a regulation operates a higher (and more appropriate) level of generality than it actually does." *Id.* For example, in *Sammartano*, the Ninth Circuit found that the challenged dress code was viewpoint-discriminatory because, though the dress code purported to merely regulate the subject matter of biker and gang symbols, it found that the appropriate level of generality was actually that the dress code regulated "those who wish to wear clothing indicating an affiliation with some organization or point of view," and thus was viewpoint-discriminatory against biker clubs. *Id.* at 971-72. ("To hold otherwise would be to allow discrimination in favor of garden clubs and gun clubs (and the points of view associated with those organizations), and discrimination against biker clubs (and their associated points of view). Under Rule 3, motorcycle enthusiasts are targeted with a regulation that applies to them solely because they choose to communicate the fact of their association with this particular kind of organization.").

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING MOTION TO STRIKE AS MOOT** # 17

1    Here, whether the Ordinance was viewpoint-neutral is closely tied to the

2    threshold question of whether the Ordinance is unrelated to the suppression of free

3    expression. *Id.* at 972 ("Motive may thus be a vital piece of evidence that courts

4    must use to judge the viewpoint-neutrality of the regulation." (citation omitted)).

5    Thus, genuine disputes of material fact exist regarding whether the Ordinance was

6    viewpoint-neutral and accordingly Defendants' Motion for Summary Judgment is

7    denied.

8         b.   *Whether the Ordinance was reasonable in light of the purpose*

9              *served by the forum*

10   Defendants argue that the purpose of the Walla Walla County Fair is to

11   provide a safe, welcoming, and family-friendly environment, that the Ordinance

12   banning gang symbols and attire was reasonable to achieving that purpose, and that

13   the evidence in the record of past incidents of gang violence at fairs was sufficient

14   to establish reasonableness. ECF No. 15 at 15; ECF No. 28 at 8-9. Plaintiffs argue

15   that the Ordinance was not reasonable because reasonableness requires three

16   components: (1) whether the regulation is reasonable in light of the purpose served

17   by the forum, (2) whether the standard is sufficiently definite and objective to

18   prevent arbitrary or discriminatory enforcement, and (3) whether an independent

19   review of the record supports [Defendants'] conclusion. ECF No. 21 at 12;

20   *Amalgamated Transit Union Local 1015 v. Spokane Transit Auth.*, 929 F.3d 643,

21   651 (9th Cir. 2019). Plaintiffs argue that the Ordinance fails for reasonableness

22   because the Ordinance was not sufficiently definite or objective to prevent

23   arbitrary and discriminatory enforcement and that there is insufficient evidence in

24   the record of motorcycle club violence to justify the Ordinance. ECF No. 21 at 11-

25   12.

26   The Ninth Circuit has noted that, even if a regulation is supported by

27   legitimate interests, reasonableness still depends on the scope of the regulation and

28   whether it is appropriately tailored. *Tucker v. State of Cal. Dep't of Educ.*, 97 F.3d

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; DISMISSING MOTION TO STRIKE AS MOOT** # 18

1204, 1215 (9th Cir. 1996) ("Even if [the government's rationale for the regulation was legitimate], the sweeping ban on the posting of all religious information would clearly be unreasonable."); *Sammartano*, 303 F.3d at 968 ("Rule 3 is not tailored to the legitimate concerns of the Complex."). Here, even if there is sufficient evidence in the record to support that Defendants had a legitimate interest in preventing violence when passing the Ordinance, there is a genuine dispute of material fact as to whether the scope of the Ordinance is reasonable relative to Defendants' legitimate interest.

The Walla Walla County Ordinance is 22 pages long and applies to a wide variety of attire. ECF No. 17-B. Many of the listed identifiers, particularly those listed in Category 2, sweep quite broadly: they include, *inter alia*, LA sports teams jerseys and logo wear, Dallas Cowboys jerseys and logo wear, the colors red, blue, green, gold, or yellow, and numbers such as 81, 20, 13, 14, 60, and 82. *Id.* The Ordinance does require that, if a peace officer is going to find a violation of the Ordinance based on a Category 2 identifier, it must be in conjunction with reasonable suspicion that the fairgoer is a criminal street gang member or associate wearing the identifier to signify such membership or association. ECF No. 17-A at 8. Even so, the Ordinance in question here is much broader that then regulations challenged in *Vlasak* and *Edwards*, where the city was merely regulating the use of wooden supports on signs to prevent violence at public demonstrations. The Ordinance is also broader than the time, place, and manner restrictions that Defendants cite to in their brief—in *Alameda Books* and *Renton*, the challenged regulations were (respectively) a prohibition on establishing more than one adult entertainment business in the same building and a prohibition on building adult theaters within 1,000 feet of any residential zone, family dwelling, church, park, or school. ECF No. 15 at 18. Finally, another district court case dealing with a challenge to a dress code prohibiting gang attire at a fair found that the dress code was not rationally related to the County's legitimate interest in preventing violence

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING MOTION TO STRIKE AS MOOT** # 19

because the dress code banned attire that would also be worn by non-gang members (i.e., a backwards baseball cap). *See Hodge*, 88 F. Supp.2d at 1243-45. Thus, there is a genuine dispute of material fact as to whether the Ordinance was reasonable in scope relative to Defendants' asserted legitimate interest.

Because the Court finds that there are genuine disputes of material fact regarding who Plaintiffs were trying to communicate their message to, whether the intended audience would have understood Plaintiffs' message, whether there is sufficient evidence in the record to justify Defendants' asserted interest of preventing gang disruption and violence, and whether the Ordinance could have been more narrowly tailored to further this interest, the Court denies Defendants' Motion for Summary Judgment.

**Selective Enforcement Claim**

In addition to their First Amendment claim, Plaintiffs also allege that Defendants' selective enforcement of the Ordinance against them violated the Equal Protection Clause. ECF No. 1 at 6. Defendants argue that Plaintiffs cannot make out a selective enforcement claim because (1) Plaintiffs cannot show that law enforcement was motivated by an impermissibly discriminatory purpose (i.e., that they discriminated against Plaintiffs on the basis of race, religion, or other arbitrary classifications) and (2) law enforcement's choice to not enforce the Ordinance against those wearing the Motorcycle Rights Shirts was consistent with the First Amendment because the Motorcycle Rights Shirts were expressive conduct and thus protected under the First Amendment, whereas Plaintiffs' SYLB/SYLA attire was not expressive conduct and was not protected. ECF No. 15 at 22-23. In response, Plaintiffs argue that their theory of selective enforcement is not based on a government official acting with an impermissibly discriminatory motive, but rather that a government official treated Plaintiffs differently with no rational basis for the difference. ECF No. 21 at 19-20. In response, Defendants argue that there

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING MOTION TO STRIKE AS MOOT** # 20

was a rational basis for the different treatment because the Deputies had reasonable suspicion that Mr. White was a criminal street gang member. ECF No. 28 at 11.

Both parties agree that Plaintiffs are not making an *Armstrong* type of a selective enforcement claim (i.e., that Defendants selectively enforced the Ordinance against Plaintiffs on the basis of an impermissibly discriminatory motive). *See United States v. Armstrong*, 517 U.S. 456, 457 (1996). Thus, the Court will focus on Plaintiffs' selective enforcement theory that they were treated differently from others similarly situated with no rational basis for the difference in treatment.

> a. *Whether Plaintiffs were intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment*

The Supreme Court has recognized selective enforcement claims under the Equal Protection Clause if the plaintiff can show (1) they have been intentionally treated differently from other similarly treated and (2) that there was no rational basis for the difference in treatment. *Vill. Of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Here, Plaintiffs allege that they were treated differently from two similarly situated groups: (1) the 30 people who wore the Motorcycle Rights Shirts containing six Category 1 identifiers, but who were not asked to leave and (2) motorcycle club members who wore a Category 2 identifier for the Bandidos, specifically as a patch on their jackets that said "SUPPORT THE RED & GOLD," but who were not asked to leave. ECF No. 21 at 19-20; ECF No. 27.

There are multiple genuine disputes of material fact embedded within this claim. For one, Defendants' argument that enforcing the Ordinance against Plaintiffs, but not against the others wearing the Motorcycle Rights Shirts, was consistent with the First Amendment depends on finding that Plaintiffs' SYLB/SYLA attire was not expressive conduct, which—as already discussed above—is a genuine dispute. Second, there is an unanswered factual question as to

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING MOTION TO STRIKE AS MOOT # 21**

whether any of the 30 other people wearing the Motorcycle Rights Shirts were also wearing additional motorcycle club insignia prohibited by the Ordinance. Given the nature of the message on the shirts—that the wearers were specifically supporting the rights of motorcycle club members to "express themselves and associate with one another at the Walla Walla fair"—it seems unlikely that no one else was wearing additional motorcycle club insignia to further support their cause. However, the parties have not submitted evidence of the other attendees' attire. Finally, there are unanswered factual questions pertaining to Plaintiffs' claim that "Deputy Beyer seems to have taken a special interest in Mr. White before confronting him at the Fair," alleging that Deputy Beyer "searched Mr. White's Facebook page and took screenshots of Mr. White's posts." ECF No. 21 at 20; *see also* ECF No. 17 at 4, ECF No. 25 at 2-3. Together, the questions of whether other attendees wore additional motorcycle insignia and why Deputy Beyer took screenshots of Mr. White's Facebook page have a significant impact on the merits of Plaintiffs' selective enforcement claim. If no other Motorcycle Rights Shirts wearers displayed prohibited motorcycle insignia at the Fair, then Deputy Beyer's assertion that he enforced the Ordinance against Plaintiffs because he had reasonable suspicion that Plaintiffs were criminal street gang members/associates becomes more plausible (i.e., none of the other wearers had prohibited identifiers; Deputy Beyer sincerely believed that the shirts with the Category 1 identifiers were protected under the First Amendment; Plaintiffs were wearing prohibited identifiers; and Deputy Beyer, through his prior interactions with Plaintiffs at motorcycle events and through Mr. White's publicly available Facebook information, had reasonable suspicion that Plaintiffs were criminal street gang members/associates trying to signify their association in violation of the Ordinance). *See also* ECF No. 17-D at 5 (where Deputy Beyer stated "I advised [Plaintiffs] that the shirt was permitted, as the red, white, and blue colors were not indicative of criminal street gang activity."). But if other Motorcycle Rights Shirts

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING MOTION TO STRIKE AS MOOT** # 22

wearers were also wearing additional motorcycle club insignia, then Deputy Beyer's investigation of Mr. White's Facebook seems more suspicious and the enforcement of the Ordinance against Plaintiffs in particular seems more targeted. Finally, Defendants offer no explanation for the facts asserted in Mr. Kincheloe's Declaration, specifically that he was wearing a similarly prohibited Category 2 identifier at the 2019 Walla Walla Fair, law enforcement knew of his involvement with a motorcycle club given that he had been asked to remove his motorcycle club insignia at the 2016 Walla Walla Fair, and yet law enforcement did not enforce the Ordinance against him. ECF No. 27. Defendants are correct that simply showing that there were other violations of the Ordinance that were unenforced is insufficient, by itself, to give rise to a selective enforcement claim. ECF No. 21 at 22. But because there are multiple genuine disputes of material fact to whether the Ordinance was enforced in an inconsistent manner and, if so, why, the Court denies Defendants' Motion for Summary Judgment.

### Plaintiffs' Remaining Claims

Because the Court finds that there are genuine disputes of material fact regarding Plaintiffs' First Amendment and Selective Enforcement claims, the Court does not find it necessary to address Plaintiffs' additional due process and equal protection claims at this time.

### Defendants' Motion to Strike Portions of the Declaration of Michael David Myers

Defendants have moved to strike portions of Michael Myers's Declaration because it is a "conclusory, self-serving opinion lacking detailed facts or any supporting evidence." ECF No. 29 at 2. Because the Court did not rely on statements in Mr. Myers's declaration in reaching its ruling, the Court dismisses the motion as moot.

//

//

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING MOTION TO STRIKE AS MOOT** # 23

1    Accordingly, **IT IS HEREBY ORDERED**:

2    1.  Defendants' Motion for Summary Judgment Dismissal, ECF No. 15, is

3  **DENIED**.

4    2. Defendants' Motion to Strike Portions of the Declaration of Michael

5  David Myers, ECF No. 29, is **DISMISSED as moot**.

6    **IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter

7  this Order and to provide copies to counsel.

8    **DATED** this 24th day of November 2020.

9

10    

11

12

13

14    Stanley A. Bastian

15    United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; DISMISSING MOTION TO STRIKE AS MOOT** # 24